**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3:21cr134–HEH |
| | ) | |
| TRAQUAN MALIK HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**(Denying Defendant's Motion to Suppress)**

This matter is before the Court on Defendant Traquan Malik Henderson's ("Defendant") Motion to Suppress (the "Motion") filed on May 5, 2022. (Mot., ECF No. 20.) Defendant has moved to suppress the pistol and extended magazine seized from his person on May 25, 2021, along with any statements he made relating to that search and seizure. He contends that the evidence was obtained in violation of the Fourth Amendment following an unlawful investigative stop. Defendant and the United States filed memoranda supporting their respective positions, and the Court heard evidence and oral argument on July 19, 2022. For the reasons that follow and as stated at the hearing, the Court will deny Defendant's Motion.

## I. BACKGROUND

Based on the testimony and evidence submitted at the hearing, the relevant facts are as follows. Richmond Police Department ("RPD") Officer Moses Railey ("Officer Railey") and his partner, Officer Devon Davenport ("Officer Davenport", and collectively, the "Officers") often conducted merchant checks at the Shop-N-Go

convenience store located at 1618 Mechanicsville Turnpike, Richmond, Virginia. (*See* Gov't's Exs. 2, 3.) During these merchant checks, the Officers patrolled the area around the store, briefly talked to the shopkeeper, and surveyed for criminal activity. Officer Railey testified that he conducted merchant checks at this particular Shop-N-Go at the request of the shopkeeper, because the shopkeeper had experienced frequent crime and gun violence around his store. In fact, the shopkeeper had relayed one incident to Officer Railey in which a victim entered his store after someone shot the victim in the street.

More generally, Officer Railey noted that crime and gun violence regularly occurred in the area around the Shop-N-Go convenience store at least since he had been assigned to the area as a patrol officer in April 2019. In RPD's First Precinct, Sector 113, where the Shop-N-Go is located, Officer Railey *alone* has made about 193 arrests and seized 179 firearms over the past 3.5 years.[1] Based on these facts, Officer Railey concluded that extra vigilance around the Shop-N-Go was necessary and reasonable to protect himself and the community.

During daylight hours on May 25, 2021, Officers Railey and Davenport conducted a merchant check at the Shop-N-Go convenience store. On the sidewalk, about 10 yards from the store's entrance (*see* Gov't's Ex. 2), Officers Railey and Davenport were talking to another person when Defendant and his young son exited the Shop-N-Go and began to walk towards them. As Defendant walked out of the store, Officer Railey noticed the end

[1] Officer Railey specifically indicated that these statistics did not include arrests he was involved in with other officers. That number would, of course, be even higher. Officer Railey additionally specified that 90 of these arrests were firearm related.

of an extended magazine[2] and a small portion of the end of a firearm sticking out from Defendant's waistband on his right side.[3]  According to Officer Railey, the extended magazine tucked in the waistband was "canted" or angled such that he thought there was a firearm attached to it, hidden inside Defendant's pants.[4]  As Defendant turned and walked out of the store, he saw Officers Railey and Davenport standing on the sidewalk. After he saw the Officers, Defendant placed his hand on the still-visible extended magazine and shoved it deeper into his waistband.

Keeping his hand on the extended magazine, now at least partially hidden in his waistband, Defendant continued to walk towards the Officers.  As he reached Officer Railey, Officer Railey said, "Lemme talk to you man," stepped in front of Defendant, and grasped his right arm. (Gov't's Ex. 1.)  Defendant stopped and responded, "Talk to me what?" (*Id.*)  Officer Railey asked, "What's that?" referring to the extended magazine and possible firearm in Defendant's waistband.  (*Id.*)  Officer Railey ordered Officer

---

[2] The Court describes the magazine sticking out from Defendant's waistband as "extended" throughout this Opinion.  To be clear, the Court uses this term only to mean that the magazine was 9 inches long, much longer than the usual magazine.  (Gov't's Ex. 4.)  The Court does not mean to say that Officer Railey *knew* it carried 20 rounds or more as prohibited under Virginia law.  Officer Railey himself admitted that he could not tell how many rounds the magazine held just by looking at it.

[3] At an earlier hearing in the General District Court of Richmond, Virginia, Officer Railey claimed that he only saw the extended magazine and not a small part of the firearm when Defendant walked out of the store.  While the Court takes Officer Railey's testimony as a whole into consideration, the Court's decision on the Motion does not hinge on Officer Railey seeing a portion of the firearm instead of just the extended magazine.

[4] Officer Railey testified that, in his experience with magazines, a magazine tucked into a waistband by itself usually sticks straight up whereas a magazine attached to a firearm usually sticks out at an angle and makes an "L-shape" because of the weight of the gun.  Defendant offered no testimony or evidence to refute this.

Davenport to help handcuff Defendant. Officer Railey testified that, as he grabbed Defendant's right hand out of Defendant's pants to handcuff him, he felt Defendant's hand firmly gripping the extended magazine attached to the firearm. When Officer Railey took Defendant's hand, he also briefly touched the grip of the firearm and the extended magazine. After a moment, Defendant let go of the firearm, which fell deeper into his pants, and Officer Railey finished handcuffing him.[5]

After the Officers placed Defendant in handcuffs, Officer Railey told Defendant, "I saw an extended magazine go down in your pants, bro." (Gov't's Ex. 1.) Defendant quickly responded, "No sir, that's a clip, sir." (*Id.*) As Defendant repeated this claim, Officer Railey reached down inside Defendant's pants and retrieved the extended magazine and firearm that he observed earlier. Officer Railey then took the firearm to his police vehicle, detached the extended magazine, and removed the bullet from the chamber.

At that point, Officer Railey asked Defendant if he had any felony convictions, but Defendant did not respond. Officer Railey then took Defendant's identification and confirmed over the phone that Defendant was a prior convicted felon and could not legally possess a firearm. The Officers then placed Defendant under arrest. They later

---

[5] Common sense would suggest that, if a person were to let go of an extended magazine placed in their waistband by itself, then it would fall through that person's pants to the ground. However, if the extended magazine was attached to a firearm, it is less likely that it would slide to the ground. The fact that, here, the extended magazine was caught in Defendant's pants is further evidence that the extended magazine was attached to a firearm. Moreover, common sense tells the Court that most people would store a magazine by itself in a pants or shirt pocket whereas a firearm with an extended magazine would need to be stored at a person's waist because of its size and, perhaps, for quick access. In fact, Officer Railey later found another magazine, unattached to a firearm, on Defendant's person after searching him incident to arrest.

confirmed that the firearm Defendant had tucked into his waistband was a Glock semiautomatic pistol and the extended magazine inserted into the Glock contained 29 rounds of ammunition. On November 16, 2021, a federal grand jury indicted Defendant for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Indict., ECF No. 3), and Defendant's Motion to Suppress followed.[6]

## II. ANALYSIS

The Fourth Amendment prohibits law enforcement officers from conducting unreasonable searches and seizures. U.S. Const. Amend. IV. This protection extends to unreasonable investigative stops and protective frisks that do not comport with *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc). Such an investigative stop, typically called a *Terry* stop, is constitutional when "at the time of the seizure, the police officer had a 'reasonable suspicion' that the person seized was 'involved in criminal activity.'" *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004)).

The burden is on the government to prove that reasonable suspicion justified a *Terry* stop. *Id.* The amount of evidence required to show reasonable suspicion is more than a mere hunch but is less than would be required to show probable cause or a

[6] Defendant was originally charged by the Richmond Commonwealth's Attorney for two misdemeanor gun charges and one count of being a felon in possession of a firearm. *See* Va. Code Ann. §§ 18.2-308.2 (felony possession), 18.2-308 (concealed carry), 18.2-287.4 (extended magazine). All charges were eventually dropped, at least in part, because of a General District Court Judge's ruling on a nearly identical suppression motion.

preponderance of the evidence. *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000); *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016). Moreover, reasonable suspicion must be based on a particularized and objective reason to stop the suspect based on the totality of the circumstances. *Kehoe*, 893 F.3d at 237 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). In this analysis, a court must give "due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (citing *Wardlow*, 528 U.S. at 125).

After beginning a lawful *Terry* stop, a law enforcement officer may, under certain circumstances, conduct a brief protective search of a suspect for weapons. *United States v. Robinson*, 846 F.3d 694, 698 (4th Cir. 2017) (en banc). An officer may only conduct this brief search, known as a *Terry* frisk, when he has reasonable suspicion that the suspect is armed and dangerous. *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)). "'[T]he purpose of' the 'limited search' authorized by *Terry* 'is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.'" *United States v. Buster*, 26 F.4th 627, 634 (4th Cir. 2022) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

"Determining the reasonableness of a protective search involves balancing the officer's interest in self-protection against the intrusion on individual rights necessitated by the search." *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996) (citing *Michigan v. Long*, 463 U.S. 1032, 1046 (1983) and *Terry*, 392 U.S. at 21). While a protective search normally involves a brief pat-down of the suspect, an officer may conduct a more

or less intrusive search depending on the factual circumstances of each case. *Id.* at 138 (citing *Terry*, 392 U.S. at 29).

Pursuant to these principles, the primary question is whether Officer Railey had reasonable suspicion that Defendant was involved in criminal activity. The facts support this conclusion. Officer Railey began his detention of Defendant when he grabbed Defendant's arm, stepped in front of him, and said, "Lemme talk to you man."[7] (Gov't's Ex. 1.) At that moment, Officer Railey had reasonable suspicion that crime was afoot based on four facts. First, Officer Railey saw an extended magazine sticking out of Defendant's waistband and sitting at an angle that suggested it was attached to a firearm. Second, Officer Railey witnessed Defendant shove that extended magazine deeper into his pants as he walked towards the two Officers, possibly to hide it from the Officers. Third, Officer Railey saw Defendant *continue* to place his hand on the extended magazine as he approached the Officers. Fourth, Officer Railey knew that the Shop-N-Go and the surrounding area were marred by gun violence and other crime. These facts, taken together, would allow a reasonable officer to detain Defendant for a brief time in order to investigate possible firearm violations.

Defendant disagrees on a number of grounds. Relying on *United States v. Nathaniel Black*, 707 F.3d 531 (4th Cir. 2013), he argues that Officer Railey unlawfully

---

[7] Only three or four seconds passed between Defendant exiting the store and Officer Railey seizing him. (Gov't's Ex. 1.) Defendant contends that this is a short time for Officer Railey to develop reasonable suspicion that crime was afoot, but that is not necessarily true. The amount of time it takes to form a reasonable suspicion is not important so long as the officer truly did have a reasonable suspicion to stop the suspect. *See, e.g.*, *United States v. Johnson*, 599 F.3d 339, 345 (4th Cir. 2010) (holding that witnessing a quick series of hand-to-hand contacts with others at a known drug market created reasonable suspicion).

stopped him merely for carrying a firearm. (Def.'s Mem. Supp. at 12–14, ECF No. 21.)

The facts of this case, however, are easily distinguishable from *Nathaniel Black*. There,

the United States Courts of Appeals for the Fourth Circuit held that seeing a suspect in a

high-crime area at night and openly carrying a firearm in a state where it is legal to do so

did not create reasonable suspicion. *Nathaniel Black*, 707 F.3d at 540–42. In that case,

besides seeing the suspect legally carrying a firearm, the officers had no *particularized*

reason to stop him. *Id.*; *see Kehoe*, 893 F.3d at 237 (observing that suspicion must be

particularized to the individual).

　　In this case, it is true that Officer Railey detained Defendant in part because he

was walking in a high-crime area and he was likely carrying a firearm. But unlike in

*Nathaniel Black*, Officer Railey had additional, particularized reasons to stop Defendant.

Officer Railey saw Defendant shove the extended magazine—and possibly an attached

firearm—into his waistband as he noticed the police presence outside the Shop-N-Go.

Officer Railey then saw Defendant continue to place his hand on the extended magazine

as he walked towards the Officers. A reasonable officer would understand those actions

as a signal that Defendant might be trying to hide the firearm and extended magazine

from the police. Of course, such suspicious activity could be "susceptible of an innocent

explanation," but a key purpose of a *Terry* stop is to "resolve the ambiguity" between

innocent and criminal actions. *Wardlow*, 528 U.S. at 125; *see United States v. Glover*,

662 F.3d 694, 697 (4th Cir. 2011).

　　Next, Defendant contends that Officer Railey's investigative stop was unlawful

because Officer Railey did not know for certain that Defendant was breaking Virginia's

extended magazine law.  (Def.'s Mem. Supp. at 14–16.)  In Virginia, it is unlawful for a person to carry a firearm that is (1) loaded; (2) semi-automatic; and (3) attached to a magazine capable of holding 20 or more rounds unless the person is a security guard, law enforcement officer, or concealed carry permit holder.  Va. Code Ann. § 18.2-287.4.[8]  So, the mere possession of an extended magazine *unattached* to a firearm is not illegal.  *See id.*  Nor is it illegal to possess a 9-inch-long extended magazine inserted into a firearm, (*see* Gov't's Ex. 4 at 4), so long as the magazine can only hold 19 rounds.  *See* Va. Code Ann. § 18.2-287.4.

Thus, an officer who sees a person carrying an extended magazine by itself, equipped with no other information, likely has no reason to detain that person for an investigative stop.  But again, those are not the facts here.  Not only did Officer Railey see the extended magazine sticking out of Defendant's waistband, but he also saw (1) that Defendant attempted to hide the magazine deeper in his pants when he noticed the presence of law enforcement; (2) that Defendant was touching the extended magazine as he approached the Officers; (3) that the angle of the extended magazine suggested a firearm was attached; and (4) that gun violence and shootings were common around the Shop-N-Go convenience store.

Armed with these additional observations, Officer Railey had reasonable suspicion that the extended magazine was attached to a firearm and could hold 20 or more rounds.  Moreover, since Defendant was attempting to hide the extended magazine from law

---

[8] This statute is also limited to only a few jurisdictions, the City of Richmond being one of them. *Id.* § 18.2-287.4.

enforcement, Officer Railey had reasonable suspicion that Defendant did not fall into the narrow category of people that could possess an extended magazine attached to a firearm. Thus, instead of *assuming* that Defendant was illegally carrying a firearm or extended magazine, Officer Railey observed circumstances that led him to reasonably suspect that Defendant could not possess these items. *See Nathaniel Black*, 707 F.3d at 540 (noting that being a felon in possession is not the default status). Instead, Defendant seems to fault Officer Railey for not being *sure* that Defendant was committing a crime. Yet, that is not the standard for an officer to make a *Terry* stop. Officer Railey need only have reasonable articulable suspicion that Defendant was engaged in criminal activity, which he had here. *See Nathaniel Black*, 707 F.3d at 537 (citing *Terry*, 392 U.S. at 21.)

Regardless of the legality of the extended magazine, Officer Railey had reasonable suspicion to believe that Defendant was unlawfully in possession of a firearm under federal or Virginia law for all the previously stated reasons. *See* 18 U.S.C. § 922(g) (prohibiting certain persons from possessing firearms); Va. Code Ann. §§ 18.2-308.2 (same), 18.2-308 (prohibiting concealed carry without a permit). Officer Railey saw evidence that Defendant had a firearm, saw that Defendant was attempting to hide that firearm from law enforcement, and knew that gun violence and crime was common around the Shop-N-Go. These facts, in their totality, establish reasonable suspicion that Defendant was unlawfully possessing a firearm and allowed Officer Railey to conduct a brief investigative stop.[9]

[9] Defendant also disagrees that the history of gun violence and crime around the Shop-N-Go can justify an investigative stop. He is correct that standing alone, the high-crime nature of an area

Lastly on the legality of the investigative stop, the circumstances justifying Defendant's detention in this case compare favorably with other cases in the Fourth Circuit. As noted before, Officer Railey had considerably more reason to stop Defendant than the officers had in *Nathaniel Black*, 707 F.3d 531. Another example is found in *Mayo*, where the Fourth Circuit upheld an investigative stop justified by the high-crime area, the presence of a bulge in a pocket suggesting a gun, and the nervous mannerisms of the suspect when he saw the police. 361 F.3d at 807–808. Here, Officer Railey had almost the exact same set of circumstances before he stopped Defendant. In fact, instead of merely seeing a *bulge* in Defendant's pocket, Officer Railey saw an extended magazine at an angle that suggested a firearm was attached. The Court could go on comparing similar fact patterns. *See, e.g.*, *United States v. Sean Black*, 525 F.3d 359, 365 (4th Cir. 2008) (upholding an investigative stop where the suspect was in a high-crime area, made awkward gestures, had a bulge in his pocket, and seemed to be lying); *United States v. Pittman*, 102 F. App'x 315, 319–20 (4th Cir. 2004) (upholding a stop in a high-crime area where the suspect was visibly nervous, made furtive gestures, and shots were recently fired in the area).

Even after stopping a suspect for a brief investigation, an officer must separately have reasonable suspicion that the suspect is armed and dangerous before frisking him for a weapon. *Robinson*, 846 F.3d at 698 (citing *Arizona v. Johnson*, 555 U.S. at 326–27).

---

cannot justify a *Terry* stop. *United States v. Mayo*, 361 F.3d 802, 807 (4th Cir. 2004) (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)). Nevertheless, "it is a factor that may be considered along with others." *Id.*

That frisk must be reasonable based on the officer's concern for his safety and the suspect's individual rights. *Baker*, 78 F.3d at 138 (citing *Long*, 463 U.S. at 1046 and *Terry*, 392 U.S. at 21).

Officer Railey had reasonable suspicion that Defendant was armed and dangerous. First, since the evidence of suspected criminal activity discussed above was tied to a possible firearm offense, that evidence equally justifies a reasonable *Terry* frisk. Moreover, to justify a *Terry* frisk after a stop, an officer need not have evidence that the suspect was *unlawfully* possessing a weapon; he need only have reasonable suspicion that the suspect has a weapon. *Robinson*, 846 F.3d at 701. This is because a *Terry* frisk is about officer safety and *not* finding evidence of a crime. *Id.*; *see Adams v. Williams*, 407 U.S. 143, 146 (1972). Thus, any concern about Defendant's ability to legally carry a firearm is not relevant to the *Terry* frisk analysis.

What is more, Officer Railey had additional evidence that Defendant possessed a weapon by the time he searched Defendant. After Defendant was detained, Officer Railey grabbed Defendant's right hand to put it in handcuffs.[10] While he was doing so, Officer Railey felt Defendant tightly holding the firearm, felt the extended magazine near Defendant's hand, and felt the grip of the firearm. After Defendant finally let go of the extended magazine, Officer Railey saw the object slip deeper into Defendant's pants but

[10] An officer may handcuff a suspect during a *Terry* stop if handcuffing is reasonably "necessary to maintain the status quo and protect [officer] safety." *United States v. Ruffin*, 814 F. App'x 741, 749 (4th Cir. 2020) (alteration in original) (quoting *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir. 1989)). With the likely presence of a firearm, it was reasonable for Officer Railey to handcuff Defendant during his investigative stop.

not fall out. These observations add even more weight to Officer Railey's reasonable suspicion that Defendant was armed and dangerous.

Then, after obtaining reasonable suspicion, Officer Railey conducted a reasonable *Terry* frisk. At this point, Officer Railey had seen the extended magazine at an L-shaped angle, had felt the extended magazine and attached firearm in Defendant's right hand, and had seen those objects fall farther in Defendant's pants once he was handcuffed. Thus, Officer Railey reasonably believed that seizing that weapon was necessary to protect himself. While a *Terry* frisk normally involves a pat-down of the suspect, other circumstances can justify a different level of search so long as it is reasonable. *See, e.g.*, *Baker*, 78 F.3d at 137–38 (upholding search where officer ordered suspect to lift his shirt); *Long*, 463 U.S. at 1047–52 (upholding search of car passenger compartment when reasonable).

*Williams*, 407 U.S. 143, exhibits this principle best. In that case, an informant had told the police that a suspect was smuggling drugs and possessed a firearm concealed on his hip. *Id.* at 147–48. After lawfully stopping the suspect, instead of conducting a full pat-down, the officer reached straight for the suspect's hip and pulled a loaded firearm from his waist. *Id.* The United States Supreme Court ruled that the officer's search was lawful under *Terry* because it was reasonable and a "limited instrusion designed to insure [officer] safety." *Id.* at 148. The facts in this case are almost identical. Officer Railey had reasonable suspicion to believe that Defendant was specifically carrying a firearm in his pants. Thus, Officer Railey limited the intrusiveness of his search by focusing on

where he believed the firearm to be. This search was eminently reasonable pursuant to *Terry*.

## III. CONCLUSION

Officer Railey's investigative stop and protective search of Defendant complied with the requirements of the Fourth Amendment and *Terry*. Therefore, the Court will deny Defendant's Motion to Suppress. (ECF No. 20.)

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 25, 2022
Richmond, VA